# Richmond

COLIN C. MACPHERSON v. JOHN LOCKE GREEN.

June 13, 1955.

Record No. 4385.

Present, All the Justices.

The opinion states the case.

*Oren R. Lewis* and *C. Wynne Tolbert*, for the plaintiff in error.

*Miles Spence Bray, Charles Pickett* and *John Locke Green*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action in detinue instituted in the Circuit Court of Arlington county by John Locke Green, plaintiff below and appellee here, against Colin C. MacPherson, now the appellant, seeking to recover possession of a letter, or the alternate value thereof, and damages in the amount of $10,000. Plaintiff's declaration, treated as a motion for judgment (Rules 3:1, 3:3), did not specify his ground for claiming $10,000 damage, but continued in these words:

"* * [A]nd plaintiff further says that the defendant, by means of his unlawful possession of said letter, which was wrongfully obtained and detained from plaintiff, its rightful owner, published said letter, but with certain changes and deletions which obscured its true meaning, for the purpose of injuring plaintiff in his reputation and standing, and did contrive by this means to greatly damage him, and plaintiff therefore asks that special damages be awarded him for the injuries so received, in the amount of Fifty Thousand Dollars ($50,000.00)."

On motion of the defendant the court struck from the declaration the quoted language, on the ground that the damages thereby claimed were not a natural and proximate result of either the taking or detaining.

Thereafter, on affidavit of Green that he believed such prejudice existed against him in Arlington county that he could not there have a fair and impartial trial, the case was removed to the Circuit Court of Hanover county where its trial before a jury resulted in a verdict finding that the letter was the property of the plaintiff "and should be returned to the plaintiff and we award damages to the plaintiff in the amount of $300.00 against the defendant Colin C. MacPherson." The verdict having failed to find the alternate value of the letter, the court, in its written opinion giving its reasons for refusing to set aside the verdict, offered to impanel a jury to determine the alternate value. Afterwards the order appealed from was entered granting judgment according to the verdict after reciting that the defendant elected not to exercise the right granted him to have the alternate value of the letter ascertained. See Code § 8-592.

On this appeal the appellant assigns a number of errors, the effect

of which is to challenge the right of the plaintiff to have the case removed to the Circuit Court of Hanover county and to recover damages from the defendant in any amount.

Removal of the case from Arlington county was had under § 8-157 of the Code, which provides for such removal "for good cause shown," § 8-159 further providing that the case shall be heard and determined by the court to which removed as if brought and the previous proceedings had in such court. The only cause for removal shown in the record was the affidavit of plaintiff alone that "he verily believes" that such prejudice exists against him "in the minds of prospective jurors" of the Circuit Court of Arlington county that he would not be given a fair and impartial trial.

It has long been the rule in this Commonwealth that the venue of a civil proceeding should not be changed for the mere belief of a party or his witnesses that he cannot have a fair trial in the jurisdiction where his case is pending. Facts and circumstances from which the conclusion is deduced must be stated, and the court must be satisfied from the facts and circumstances sworn to that a fair trial cannot be had in that court. *Boswell* v. *Flockheart*, 35 Va. (8 Leigh) 364; *Wright* v. *Commonwealth*, 114 Va. 872, 77 S. E. 503; *Ramsay* v. *Harrison*, 119 Va. 682, 89 S. E. 977. It was reversible error therefore to remove the case from the Circuit Court of Arlington county merely on the affidavit of the plaintiff as to his belief. For that error the case would have to be remanded to the Arlington court for a new trial except for the reasons stated below.

The appellant does not question the sufficiency of the evidence on the trial in Hanover county to support the finding that the plaintiff was entitled to have possession of the letter. It was produced at the trial, tendered to the plaintiff, filed in evidence and is now in the record, subject to be returned to the plaintiff as demanded. Another trial to secure possession of it is not needed. The only issue remaining is on the question of damages.

The letter was dated December 29, 1945; written by the president of a bank in Orange, Virginia; addressed to John Locke Green, Treasurer of Arlington county, the pertinent part of which was these two paragraphs:

"I am returning herewith List No. 2, loans approved by us for service charges, together with check for $1851.50 payable to your order, which you may deliver to Hosmer & Pumphrey, or dispose of as you see fit.

"We have added the William Parramore loan to our list, but the Tuthill loan did not come in until after December 17th, the date of the Hosmer & Pumphrey list sent us. The Maurice Ireland note was paid September 27, 1945; and the remaining four notes, that is, Tracy, McFarland, Clary and Sterner, do not appear on any of our records."

Green and MacPherson were opposing candidates for the office of treasurer of Arlington county in the election held on November 6, 1951. Green had been elected to that office at three previous elections as a party candidate but ran in 1951 as an independent. During his tenure of office Green made loans for banks and received compensation for that service. In a prior campaign and in the 1951 campaign his opponents criticized that practice. In some of these loan transactions the law firm of Hosmer & Pumphrey was associated with him. Prior to the date of the letter the president of the Orange bank called Green and stated that he had a long list of loans from Hosmer & Pumphrey which the bank had agreed to pay them for; that Green had had something to do with these loans so the check was being made payable to Green and he could straighten it out. Green testified that he divided the $1,851.50 received from the bank equally among Hosmer & Pumphrey, J. Maynard Magruder and himself; that he gave the letter and the list to Hosmer & Pumphrey so they could check the loans listed; but that he did not give the letter to them to give away or show anybody. This letter remained in the office files of Hosmer & Pumphrey until it was obtained and published by MacPherson.

In the 1951 campaign Green and Pumphrey were not on friendly terms. MacPherson went to Pumphrey, solicited his aid in the election and procured from him the letter in question without the knowledge or consent of Green. Pumphrey told MacPherson when he gave him the letter that he did not want the names in the letter published because they had no business in a political campaign. MacPherson thereupon deleted the proper names in the letter, reproduced the letter as deleted in a printed circular and mailed it out to voters on October 27, 1951. In the circular by the side of the letter was a statement to the effect that Green was acting as loan broker for certain banks in which he had deposited Arlington tax funds; that "He tells you he has not received substantial fees for arranging loans. The letter reproduced here proves otherwise;" followed by an appeal to vote for MacPherson for treasurer.

On October 29, 1951, Green wrote MacPherson stating that he had seen the circular; that the deletions had changed the entire meaning of the letter and that MacPherson had perpetrated a fraud; that the letter belonged to Green and he wanted to know where MacPherson got it and demanded the return of the letter. This letter to MacPherson was published by Green in the November 1, 1951, issue of the *Arlington Journal* under the heading "Who Stole My Letter?" It was also published without comment in the October 31 issue of the *Arlington Daily Sun.*

The opening statement to the jury at the trial was made by plaintiff personally and in it he referred to his success in previous elections and his loss of this one, which he coupled with the publication of the letter. On objection by the defendant the court ruled that "the second part of the notice of motion, which was an action for slander, has been stricken out," and limited the trial to the action of detinue and damage for detention of the letter, to which plaintiff's counsel responded: "That is right."

That, however, was not the issue that was tried. The plaintiff called his adversary as an adverse witness and cross-examined him. Defendant's counsel objected that the political campaign was being tried. Plaintiff counsel responded: "The political campaign has not been ruled out of this case. It is right in it." And it was. The plaintiff himself joined in to say, "It is for the jury to determine any damage for the use he put it to," and the court agreed. From then on the evidence ranged far and wide into political conditions in Arlington county; the interference of a Washington newspaper in county affairs; the comparative merits and demerits of political parties; the fact that the defendant was not a native Virginian but came from Indiana, how he was nominated, who attended the convention and who were its leaders; and even a comment was included on the fitness of his counsel to be a Federal judge. We have not previously read a court procedure like it. We hope we shall not have to do so again. It was far removed from the order and dignity that should attend the judicial process in its effort to find the truth and establish justice.

On cross-examination the plaintiff still maintained that the loss of the election was an element of his damage. He was asked whether the damage he was claiming was that suffered by him in the loss of the election for treasurer and he replied, "I would say so." He also stated: "I concede as a letter it possibly was worth nothing except to me, * *."

After the jury had heard all that was offered the court instructed them orally that they should not regard the evidence "as to the loss of the office or the defeat of Mr. Green. That damage is too remote and too speculative, and I have stricken the evidence as to that;" that if the jury found that the letter belonged to the plaintiff "then the question of what amount of damage he incurred by reason of the publication of the letter in the form in which it was published, that is the only damage that he has attempted to prove, and the newspaper advertisements, what they amounted to."

Written instructions were also given, including one for the plaintiff which told the jury that if the plaintiff left the letter with Hosmer & Pumphrey without any intention to part with the property therein, then it remained plaintiff's property, Pumphrey committed a breach of duty in delivering it to MacPherson, and MacPherson committed a wrong in publishing it in its deleted form, and if the plaintiff incurred expense in rebutting the publication, the jury should find for him such damages as they believed from the evidence he sustained "by reason of his advertisements in the newspapers to rebut same, that is, the cost of such advertisements."

Whether the $300 damage awarded by the jury to the plaintiff was for the cost of newspaper advertisements or included other damage incurred by reason of the publication of the letter, cannot definitely be answered. The plaintiff testified that he spent some six hundred dollars for newspaper advertisements, which the defendant questioned. If that were a proper element of damage in this action the judgment would still have to be set aside for the admission of improper testimony and uncertainty in instructions on damages. However, we do not think any damage on account of publication of the letter is recoverable in this detinue action.

Detinue is a possessory action having for its object the recovery of specific personal property and damages for its detention. Burks Pl. and Pr., 4 ed., § 125, p. 239; 6 Mich. Jur., Detinue &c., §§ 3-5, p. 169; Barton's Law Pr., 2 ed., Vol. I, § 59, p. 212; 4 Minor's Institutes, 3 ed., Pt. 1, p. 429; *Sinclair* v. *Young*, 100 Va. 284, 287, 40 S. E. 907, 908; *Baker* v. *Bank of Milton*, 120 W. Va. 788, 200 S. E. 346.

"It is said to be one of the anomalies of our system of pleading that debt and detinue may be joined in the same action (4 Minor's Inst. 447-8), but it has never been held that a plaintiff can sue in detinue and recover in debt.

"The gist of an action of detinue is unlawful detainer of the specific property sued for—not any other property, and not a money obligation due from the defendant to the plaintiff. The effect of the instruction complained of as it seems to us, was to convert an action of detinue into one of debt or assumpsit. * *." *Virginia Land Immigration Bureau* v. *Perrow*, 119 Va. 831, 836, 89 S. E. 891, 892.

To allow recovery for damages flowing from wrongful publication of the letter would be to convert the plaintiff's action of detinue into one for defamation of character or for libel and slander for words written or spoken of a candidate for public office, in which action the issues would bear no relationship to those in a detinue action.

Ordinarily the measure of damages in a detinue action is the value of the use or hire of the article during the period of unlawful detention. 26 C.J.S., Detinue, § 23 b.(1), p. 1286; 16 Am. Jur., Detinue, § 13, p. 955; Anno., 96 A.L.R. 240; *McGinnis* v. *Savage*, 29 W. Va. 362, 379, 1 S. E. 746, 758; *Lowther* v. *Ohio Valley Oil &c. Co.*, 88 W. Va. 650, 656, 108 S. E. 276, 278.

The value of the use or hire of an article wrongfully possessed by the defendant obviously does not include damages due to the defendant's misuse thereof whereby he inflicts a wrong upon the plaintiff in a manner having no causal relation to the taking of the property. For example, a plaintiff could not sue in detinue for his automobile and have damages for the defendant's driving it afterwards against the plaintiff or the plaintiff's car in the public road. Here the defendant's possession of the letter did not cause the plaintiff to lose the election or to spend money for newspaper advertising. It was his alleged misuse of the letter after obtaining possession of it that allegedly produced that result. If the defendant had copied the letter and then returned the original to the plaintiff or to Pumphrey, publication of the copy would have caused the same result. Yet plaintiff could not have maintained detinue for his damage.

In *Louisville & N. R. Co.* v. *James*, 204 Ala. 604, 86 So. 906, an action in detinue by James to recover household furniture and damages for its detention, it was held that while deterioration in value of the property caused by neglect or abuse was an element of damage, the plaintiff could not recover for inconvenience, annoyance or distress as a result of being deprived of his property.

*Stallard* v. *Stepp*, 91 W. Va. 60, 64, 112 S. E. 184, 186, was an

action of detinue to recover possession of an automobile. The defendants claimed the right of possession on account of work and repairs thereon. It was said in the opinion:

"The only issue before the jury in a case of detinue is the right to the possession of the property sued for. This we decided in effect in *Caroway v. Cochran, supra* [71 W. Va. 698, 77 S. E. 278]. That case holds that in an action of detinue there can be no cross action against the plaintiff for compensation for the care and keep of the property, but such a claim gives right of detention, the amount thereof being the subject of a judgment and not a matter in issue in the detinue case. * *."

*Kinney v. Glenn*, 240 Ala. 202, 205, 198 So. 256, 257, was a detinue action for cotton in bales and cotton seed. On the question of damages the court said:

"* * If the property had value for use and hire, that would control, but when it has no such value, the successful party is not awarded compensation for the wrongful detention except upon some such basis as the legal rate of interest on the amount of its ascertained value. * *."

In 4 Sutherland on Damages, 4 ed., § 1146, p. 4319, it is said: "There may be a recovery of such special and consequential damages as arise naturally and proximately from the wrongful caption or detention of property. * *."

If the property has no value for use or hire and no other ascertainable value as a basis for an interest charge, detinue is not an appropriate action for recovery of damages which did not arise from the detention of the property. As observed in *Universal Co. v. Botetourt Motor Co.*, 180 Va. 159, 176, 21 S. E. (2d) 800, 806, "Plaintiff having received the benefit of the statutes pertaining to detinue, it should assume the burdens imposed by the same statutes." Cf. 4 Minor's Institutes, 3 ed., Pt. 1, p. 450.

■■ The plaintiff assigned cross-error to the action of the Arlington court in striking out his claim for special damages and now claims that he was entitled to punitive damages, citing *Whitfield* v. *Whitfield*, 40 Miss. 352; *Cable, et al.* v. *Dakin & Dakin*, 20 Wend. (N. Y.) 172; *Gross* v. *Hays*, 73 Tex. 515, 11 S. W. 523; *Dorsey* v. *Manlove*, 14 Cal. 553.

Those cases are authority for the proposition that in a detinue action compensation refers to the injury done to the property taken or detained and not to collateral damage resulting therefrom to the owner; but that if the taking or detaining is done from wanton or

malicious motive, or under circumstances of great hardship or oppression, punitive damages may be allowed. They have no application to this case.

Plaintiff's claim for special damages was for publishing the letter, not for taking or detaining it. The court properly struck out that claim, for the reason that the damages claimed were not a natural or proximate result of the taking or detaining. The record shows that the plaintiff excepted to that ruling without stating any ground or making any reference to punitive damages. His assignment of cross-error was that the court "erred in striking that portion of the declaration," again without stating any ground and with no reference to punitive damages. There was no suggestion at the trial that punitive damages should be awarded, no evidence was introduced on which such damages could be based, and no issue of that kind was presented or offered to be presented to the jury.

On his pleadings and under the evidence in this detinue action the plaintiff could recover only compensatory damages for the taking and detaining of the letter, not for the loss of the election attributed to its publication, which he conceded to be the basis of his claim; and there was no evidence of any other damage except the cost of newspaper advertising. That item was not a natural and proximate result of the taking or detaining but constituted a campaign expense related to the publication of the letter and not to its taking or detention. It was not recoverable in this detinue action.

The plaintiff is entitled to the possession of the letter sued for, which will be delivered to him by the clerk of this court. The ascertainment of its alternate value has been waived as shown by the final order. The plaintiff has not alleged and proved any damages that can be recovered in a detinue action. Hence, no cause exists for remanding the case to Arlington county for a new trial and it should be disposed of in this court. *Cohen* v. *Rosen*, 157 Va. 71, 75, 160 S. E. 36, 37.

The judgment below is accordingly affirmed to the extent that it grants to the plaintiff possession of the letter, and is reversed insofar as it grants plaintiff judgment for damages. Each party shall pay one-half the taxable costs here and in the trial court, and final judgment will be entered here.

*Affirmed in part;*
*reversed in part*
*and final judgment.*